OPINION *Page 2 
{¶ 1} Defendant-appellant Daniel V. Johnstone appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of attempted murder, in violation of R.C. 2923.02(A), and one count of felonious assault, in violation of R.C. 2903.11(A)(1), each with an attendant firearm specification, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On June 4, 2007, the Stark County Grand Jury indicted Appellant on the aforementioned charges. Appellant appeared before the trial court for arraignment on June 8, 2007, and entered a plea of not guilty to both charges. Appellant waived his right to a speedy trial, and the matter proceeded to trial on October 9, 2007.
 {¶ 3} At trial, Anthony Swinson, the victim, testified he met Appellant at the Haven of Rest, a homeless shelter in Akron, Ohio, in November, 2006. The two men became friends and found employment together. Appellant subsequently left the Haven of Rest, and Swinson did not see him for over a month. Sometime at the end of January, 2007, Appellant visited the Haven of Rest and invited Swinson and another individual to stay with him at a female friend's residence. Swinson and the other man accepted Appellant's offer and stayed at the residence for a night or two. Appellant subsequently invited Swinson to stay with him at another female's house in Canton. During their stay in Canton, Appellant and Swinson along with Montel Dunn and Sharez Waiters spent the evening of January 29, 2007, drinking. Swinson noticed Dunn had a gun tucked in the waistband of his pants. *Page 3 
 {¶ 4} Sometime after midnight on January, 30, 2007, one of the men made a phone call and then suggested to the others they visit another friend. The men walked to the friend's residence with Swinson and Waiters leading the way, and Dunn and Appellant behind them. Out of the corner of his eye, Swinson noticed Appellant hanging on Dunn's shoulder, whispering in his ear. Swinson thought nothing of Appellant's behavior. Minutes later, Swinson heard a gunshot and immediately felt a burning sensation in his head. He turned around and saw Appellant holding a gun, the same gun Swinson had seen in Dunn's waistband earlier that evening. After realizing Appellant was attempting to fire another shot, Swinson rushed him and wrestled for the gun. Appellant yelled to Dunn and Waiters to get Swinson. Swinson managed to pry the gun from Appellant, and after he did, Appellant fled. Dunn and Waiters approached Swinson in an attempt to assist him, however, Swinson was suspicious of their motives and held the gun on them. He told them to stay away and call for an ambulance. Swinson walked to the door of a nearby house and asked the woman who answered to call the police.
 {¶ 5} Officer Mark Diels of the Canton Police Department testified he was dispatched to the area of 33rd Street and Coventry at approximately 1:46 am on January 30, 2007. When the officer arrived at the scene, he found Swinson badly bleeding from the back of his head. Swinson advised Officer Diels he had a weapon in his pocket, which the officer removed. Swinson immediately told Officer Diels Appellant had shot him. Officer Diels described Swinson as very nervous and scared. Swinson told the officer what had transpired and how he gained possession of the gun. Although Officer *Page 4 
Diels noticed an odor of alcohol on Swinson's person, and Swinson had admitted he had been drinking, the officer found the victim to be coherent and oriented.
 {¶ 6} Swinson was subsequently transported to Mercy Hospital where he underwent a CT scan. The scan revealed gunshot pellets lodged in his skull, which could not be removed. After being released from the hospital, Swinson proceeded to the police station where he viewed a photo array and identified Appellant as the shooter. Dunn and Waiters were also shown photo arrays and also identified Appellant as the shooter. At the scene, Officer Diels collected the gun, a spent round from the right barrel of the gun, and a round of live ammunition. Officer Randy Weirich brought the items to the Canton-Stark County Crime Lab.
 {¶ 7} Detective Victor George interviewed Dunn and Waiters as witnesses to the shooting. Detective George did not test for gunshot powder residue on Waiters, Dunn, or Swinson because, from the information police gathered through their investigation, Appellant was the only individual who handled the firearm until Swinson wrestled him for the gun after he (Swinson) had been shot.
 {¶ 8} Jennifer Creed of the Canton-Stark County Crime Lab analyzed DNA samples collected from the gun Swinson gave to police. However, the samples did not contain a sufficient amount of DNA from which Creed could develop a profile. Creed explained it not unusual to not obtain a result when dealing with touch DNA, which is the residual cells left on an item after someone has handled it. Creed conducted DNA typing on blood samples. The DNA did not match Appellant's DNA profile.
 {¶ 9} Michael Short, a criminalist with the Canton-Stark County Crime Lab, who is an expert in fingerprint and firearms, examined the gun collected by police during the *Page 5 
investigation. Short found the gun to be operable, but with several malfunctions. The gun could not be fired merely by pulling the trigger. In order to strike the firing pin, the shooter had to hold back the hammer and release it. To discharge the gun a second time using a cartridge from the left barrel, the shooter would have to pull back the hammer and manually flip over a lever. Short was unable to develop identifiable fingerprints on the gun.
 {¶ 10} After hearing all the evidence and deliberations, the jury found Appellant guilty as charged. The trial court found the attempted murder and felonious assault charges to be allied offenses of similar import, and merged these counts and the two gun specifications for purposes of sentencing. The trial court sentenced Appellant to a total term of incarceration of thirteen years.
 {¶ 11} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 12} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 13} "II. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 14} "III. THE TRIAL COURT ERRED BY ADMITTING HEARSAY STATEMENTS IN VIOLATION OF THE APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES.
 {¶ 15} "IV. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT." *Page 6 
 I {¶ 16} In his first assignment of error, Appellant challenges the sufficiency and manifest weight of the evidence.
 {¶ 17} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N .E.2d492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily *Page 7 
for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 19} Appellant predicates his argument on the grounds the State did not present an eye witness to the shooting, inconsistencies existed between the testimony of witnesses, and the credibility of the victim was questionable. Appellant notes Swinson, the victim, did not see who fired the gun. With respect to the inconsistency in the testimony, Appellant explains Montel Dunn was called as a court's witness; however, he refused to answer questions, asserting his Fifth Amendment Right. The trial court allowed his Grand Jury testimony to be read to the jury. Dunn told the Grand Jury, on the evening of the shooting, he was walking in front of Swinson. Swinson, on the other hand, recalled Dunn was walking behind him and Appellant was whispering to Dunn. Appellant also attacks Swinson's credibility based upon the fact he (Swinson) was under the influence of alcohol on the night of the shooting, he is a convicted felon, and his testimony was contradicted by Dunn's Grand Jury testimony.
 {¶ 20} Upon review of the entire record in this matter, we find there was sufficient, competent, credible evidence to establish Appellant as the shooter. Swinson testified he heard a gun shot and then felt a burning in his head. Within seconds, he turned around and saw Appellant with a gun in his hand, attempting to fire the weapon a second time. Swinson tackled Appellant in an attempt to disarm him. After Swinson gained control of the gun, Appellant fled the area. Swinson testified, after Appellant fled, Dunn and Waiters approached to help him. Swinson yelled at them to stay away from him. Dunn and Waiters responded by telling him, "Daniel just shot you in the head, man, we're trying to see if you're alright." Tr. at 111. Appellant maintains Swinson's *Page 8 
testimony was inadmissible hearsay. We disagree. We find the statements were properly admitted as excited utterances. Assuming, arguendo, the evidence was improperly admitted, we find such to be harmless error as Swinson testified he turned around within two seconds of being shot and saw Appellant in possession of the gun.
 {¶ 21} Appellant further argues his conviction was against the manifest weight and sufficiency of the evidence as the jury should not have found Swinson credible and because of inconsistencies between Dunn's Grand Jury testimony and Swinson's trial testimony. As we have often said, a jury is free to accept or reject any or all of the testimony of the witnesses. The jury obviously believed Swinson's version of the events of the evening. With respect to the inconsistency between Dunn's Grand Jury testimony in which he stated he was walking in front of Swinson, and Swinson's trial testimony in which he recalled Dunn was walking behind him with Appellant, we find such inconsistencies do not render Swinson's version incredible.
 {¶ 22} Based upon the foregoing and the entire record in this matter, we find Appellant's conviction was neither against the manifest weight nor the sufficiency of the evidence.
 {¶ 23} Appellant's first assignment of error is overruled.
 II {¶ 24} In his second assignment of error, Appellant raises an ineffective assistance of counsel claim.
 {¶ 25} The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant *Page 9 
must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different.State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 26} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 27} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing there is a reasonable probability but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 28} Specifically, Appellant maintains trial counsel was ineffective for failing to object "to hearsay statements regarding the identify of the shooter" as these statements were the only evidence which identified Appellant as the individual who shot Swinson.
 {¶ 29} As discussed in Appellant's first assignment of error, supra, we find Swinson's testimony relative to what Dunn and Waiters said to him immediately after the shooting admissible under the excited utterance exception to the hearsay rule. Accordingly, even if defense counsel had objected, Appellant has not demonstrated such an objection would have been sustained. Trial counsel is not required to make a *Page 10 
motion which does not have a reasonable probability of success on the merits. See, State v. Uselton, Ashland App. No. 03COA032,2004-Ohio-2385. Assuming, arguendo, defense counsel was ineffective for failing to object, we find Appellant cannot demonstrate there is a reasonable probability the outcome would have been different had Dunn's and Waiter's statements been excluded. Swinson himself testified he observed Appellant with the gun in his hands seconds after he was shot; therefore, the additional statements would be cumulative.
 {¶ 30} Appellant's second assignment of error is overruled.
 III {¶ 31} In his third assignment of error, Appellant contends the trial court erred in admitting hearsay statements in violation of the Confrontation Clause of the Sixth Amendment. This assignment of error also involves Swinson's trial testimony regarding what Waiters and Dunn told him after the shooting. Appellant cites to Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, in support of his argument.
 {¶ 32} The Sixth Amendment to the United States Constitution states, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"
 {¶ 33} In State v. Dunivant, Stark App. No. 2003CA00175,2005-Ohio-1497, the Ninth District Court of Appeals, sitting by assignment for this Court, provided a detailed analysis of the issue sub judice:
 {¶ 34} "In Crawford v. Washington, supra, the United States Supreme Court explained that this, the Confrontation Clause, encompasses the concept of `testimonial' *Page 11 
statements as determinative of who are `witnesses' for the purpose of such confrontation on questions of hearsay: `Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does [Ohio v. Roberts (1980), 448 U.S. 56, 65 L.Ed.2d 597], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.' Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, 203.
 {¶ 35} "Thus, the threshold determination becomes, whether the hearsay statements in question are classified as testimonial. Although theCrawford Court explicitly abstained from providing an exacting definition of testimonial, it did provide three formulations for such determination, without expressly adopting any. See id. at 203. They are, as aptly summarized by the First Circuit Court of Appeals:
 {¶ 36} "`The Crawford Court declined to provide a comprehensive definition of testimonial statements. It did, however, provide three formulations of the core class of testimonial statements.
 {¶ 37} "`[1] In the first, testimonial statements consist of ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially. *Page 12 
 {¶ 38} "`[2] The second formulation described testimonial statements as consisting of extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.
 {¶ 39} "`[3] Finally, the third explained that testimonial statements are those made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
 {¶ 40} "`While the Court declined to settle on a single formulation, it noted that, whatever else the term testimonial covers, it applies to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. These are the modern abuses at which the Confrontation Clause was directed." (Internal citations, quotations and edits omitted; paragraph breaks and numbering added.)Horton v. Allen (C.A.1, 2004), 370 F.3d 75, 84, citing and quotingCrawford, 158 L.Ed.2d at 193, 203.'" Id. at paragraph 7.
 {¶ 41} We find Dunn and Waiters' statements to Swinson Appellant had shot him were nontestimonial statements. Dunn and Waiters made the statement to Swinson immediately after the shooting, as they tried to help and orientate the victim. Because we find these statements are nontestimonial in nature, such are admissible if they fit within a hearsay exception. We find the statements fall under Evid. R. 803(2), which provided a hearsay exception to "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Page 13 
 {¶ 42} In State v. Duncan (1978), 53 Ohio St.2d 215, 373 N.E.2d 1234, the Ohio Supreme Court set forth a four-part test to determine whether a statement qualifies as an excited utterance under Evid. R. 803(2). The trial court must find the following:
 {¶ 43} "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." Id.
 {¶ 44} We find, under this four part analysis, the trial court could properly found Dunn and Waiters statements to be excited utterances. Because the statements were excited utterances and nontestimonial in nature, we find the trial court properly admitted such.
 {¶ 45} Appellant's third assignment of error is overruled. *Page 14 
 IV {¶ 46} In his final assignment of error, Appellant claims he was denied his right to a fair trial due to prosecutorial misconduct.
 {¶ 47} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial.Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144. A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. State v.Treesh (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749." Furthermore, both the prosecution and the defense have wide latitude during opening and closing arguments.
 {¶ 48} During closing arguments, the prosecutor stated several times during her closing argument Appellant had attempted to reload the gun before Swinson wrestled it away from him. Appellant contends this fact was never established or alleged in any testimony presented by the State. Appellant submits, during his testimony, Swinson described Appellant as "fumbling" with the gun or trying to "pull the pin back". Appellant concludes the prosecutor failed to act in good faith by stating Appellant attempted to reload the gun. Defense counsel did not object to the prosecutor's comments; therefore, Appellant has waived all but plain error. *Page 15 
 {¶ 49} Pursuant to Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Cooperrider (1983),4 Ohio St.3d 226, 448 N.E.2d 452. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Stojetz, 84 Ohio St.3d 452, 455,1999-Ohio-464.
 {¶ 50} Upon review of the entire closing, we find the prosecutor's comments were not improper. Although the prosecutor's characterization of Appellant as "reloading the gun" slightly differed from Swinson's testimony Appellant was "fumbling" with the gun and trying to "pull the pin back", Appellant has not demonstrated, but for this alleged misstatement of the testimony by the prosecutor, the outcome of the trial would have been different.
 {¶ 51} Appellant's fourth assignment of error is overruled. *Page 16 
 {¶ 52} The judgment of the Stark County Court of Common Pleas is affirmed.
 Hoffman, P.J., Gwin, J., and Farmer, J., concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1